Filed 4/27/21  P. v. Markbreiter CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THE PEOPLE, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> ROSS FENTON MARKBREITER, <br><br> Defendant and Appellant. | D076914 <br><br><br> (Super. Ct. No. SCN386613) |

APPEAL from a judgment of the Superior Court of San Diego County, Burt Pines, Judge (Retired judge of the San Diego Co. Sup. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.).  Affirmed.

Walk Free Law and Alana Yakovlev, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Eric A. Swenson and Michael D. Butera, Deputy Attorneys General, for Plaintiff and Respondent.

INTRODUCTION

Defendant Ross Fenton Markbreiter used a gun to threaten a repossession agent (victim) who had come to repossess a car after defendant

made no payments on his loan for more than a year.  At gunpoint, defendant forced the victim to release the car, took the victim's phone while he was calling the police, and drove the car away.  Defendant appeals his conviction on several grounds, including instructional error, sufficiency of the evidence, alleged ineffective assistance of counsel, and abuse of discretion in sentencing.  We affirm.

## BACKGROUND

*Procedure*

A jury convicted defendant of carjacking (Pen. Code,[1] § 215, subd. (a), count 1), robbery (§ 211, count 2), assault with a semiautomatic firearm (§ 245, subd. (b), count 3), and attempting to dissuade a witness from reporting a crime (§ 136.1, subd. (b)(1), count 4).  The jury also found true allegations that defendant personally and intentionally used a firearm in the commission of the carjacking and robbery (§ 12022.53, subd. (b)), and personally used a firearm in connection with the assault and attempt to dissuade a witness (§ 12022.5, subd. (a)).  The court denied probation and sentenced defendant to the low term of three years on count 1 (carjacking) with a concurrent middle term of three years on count 2 (robbery).  It imposed and stayed sentences on counts 3 (assault with a semiautomatic firearm), and 4 (attempting to dissuade a witness).  The court struck the firearm enhancements.

Defendant timely appealed.

*Facts*

Defendant purchased a car and financed it with a loan secured by the car.  It was registered in his name, and he made the required payments for a

---

[1]    Further statutory references are to the Penal Code unless otherwise specified.

2

year to a year and a half, until the middle of 2016. He made no more payments on the loan after that, although he knew he was contractually obligated to do so. Defendant did not return the car. Rather, he continued to drive it.

On May 16, 2018, the victim, who was a licensed repossession agent, received an electronic repossession order for the car. The victim had a tow truck that was marked on both sides with the repossessor's license number. He drove the tow truck to defendant's address in Carlsbad, carrying with him his repossession license and the electronic order. The victim located the car, verified the license plate and VIN number, then attached the car to his tow truck and hoisted the rear of the car up off the ground.

Defendant came up to the victim and asked what he was doing. The victim said he was a repossession agent with an order to repossess the car due to lack of payments. Defendant said, "[Y]ou're not taking my car." He did not ask to see the victim's license or the repossession order.

Defendant went into his apartment and returned with a 9-millimeter semiautomatic firearm. He pointed the gun at the victim from about four feet away and told the victim to release the car from the tow truck. The victim agreed to do so. Defendant lowered the gun and held it at his side, a few feet from the victim, while the victim removed the car from the tow truck.

When he was on the other side of his truck from defendant the victim called 911. He was nervous, scared, and terrified. He was afraid he would lose his life. The victim told the dispatch operator that someone pulled a gun on him during a repossession. The victim had his phone up to his ear, talking to the dispatcher. Defendant saw him and said, "Are you asking to get shot?" Defendant walked up to the victim, held the gun up and aimed at the victim's

3

chest from a foot away. He demanded the phone. The victim told him, "Don't take my phone." The call ended abruptly.

The victim finished releasing the car from the tow truck and drove his truck forward a bit from the car. He asked defendant if defendant would give him his phone back. Defendant said he would leave it on the sidewalk, but he was trying to crush the phone as he held it. Defendant drove off in the car, taking the phone with him.

Police arrived within about 10 minutes. They tracked the victim's phone and found the car. Defendant was sitting in the driver's seat. The police took defendant into custody. The victim's phone was on the passenger seat of the car. It was broken and not usable. The police also found a semiautomatic handgun in the center console. The gun was loaded and cocked with one round in the chamber and five more in the magazine.

Defendant testified. He denied threatening the victim with the gun. Defendant said that he was never contacted by the lender after he stopped making payments on the car. He claimed that he checked his credit report and it showed that the loan had been charged off. Defendant said he understood that to mean that the creditor had stopped collection efforts.

Defendant further testified that he saw someone at his car and asked that person what he was doing. The victim said he had a repossession order. Defendant testified that he asked to see the victim's identification and the repossession order, but that the victim refused to show him the documents. Defendant said he thought the victim was a thief who was taking his car, and for that reason went into his apartment to get his gun and returned with his gun holstered. He asked for his car back. He stated he did not point the gun at the victim when he asked for his car back.

4

Surveillance video shows that defendant held the gun out of its holster during parts of the encounter. Defendant testified that he put his gun away when the victim asked him to.

Defendant said when he saw the victim using his phone, he thought the victim was a criminal calling for backup. Defendant held his gun in his hand when he told the victim to hand over his phone. Defendant said he tucked his gun into his waistband to reach over and grab the phone from the victim. Defendant denied asking the victim if he wanted to be shot. Defendant said he intended to leave the victim's phone for him on the sidewalk, but that he forgot and drove off with it by mistake.

DISCUSSION

I

CARJACKING INSTRUCTIONS

Defendant raises two issues on carjacking instructions that are both based on the same underlying theory: that carjacking is a crime against ownership and therefore defendant would not be guilty if he had a good faith belief that he had an ownership interest in the vehicle when he took it. First, defendant contends that the court erred in modifying the then existing standard CALCRIM instruction to delete its reference to a taking from the owner of the vehicle. Second, defendant claims the court erred in failing to give a claim-of-right-defense instruction sua sponte. Both claims fail because a claim of right is not a defense to the crime of carjacking.

A. *Proceedings Below*

Defendant moved to dismiss the carjacking count at the conclusion of the prosecution case-in-chief, arguing that the People had failed to prove that defendant had not taken his own car. The court denied the motion,

5

concluding that carjacking is a crime against possession, not a crime against ownership.

When discussing instructions, defendant asked the court to give CALCRIM No. 1650 as written at that time, which stated in part, "1. The defendant took a motor vehicle that was not (his/her) own; 2. The vehicle was taken from the immediate presence of a person who possessed the vehicle . . . ." (CALCRIM No. 1650, eff. March 2017–March 2019.) The prosecutor objected and asked the court to modify the form instruction to delete the element of taking of "a motor vehicle that was not his own." The court agreed with the prosecutor and modified the instruction by using a phrase from the predecessor instruction, CALJIC No. 9.46. The court instructed the jury:

"[T]he People must prove that:

"One, a person had possession of a motor vehicle;

"Two, the motor vehicle was taken from his or her person or immediate presence . . . .

"Three, the vehicle was taken against that person's will;

"Four, the defendant used force or fear to take the vehicle or to prevent that person from resisting; and

"Five, when the defendant used force or fear to take the vehicle, he intended to deprive the other person of possession of the vehicle either temporarily or permanently."

The defendant did not specifically ask the court to give a claim-of-right defense instruction.

6

B. *Applicable Principles*

"A trial court must instruct the jury on general principles of law necessary for the jury's understanding of the case." (*People v. Ramirez* (2019) 40 Cal.App.5th 305, 307.) As part of the duty to instruct on the applicable principles of law, the court has a sua sponte duty to instruct on defenses relied upon by the defendant. (*People v. Breverman* (1998) 19 Cal.4th 142, 157.) "Defendants have a right to an instruction pinpointing their defense theory, but the court may refuse incorrect, argumentative, duplicative, or confusing instructions." (*Ramirez*, at p. 307.)

" 'Errors in jury instructions are questions of law, which we review de novo.' " (*People v. Fenderson* (2010) 188 Cal.App.4th 625, 642.)

C. *Claim of Right Defense to Carjacking*

" 'Carjacking' is the felonious taking of a motor vehicle in the possession of another, from his or her person or immediate presence, or from the person or immediate presence of a passenger of the motor vehicle, against his or her will and with the intent to either permanently or temporarily deprive the person in possession of the motor vehicle of his or her possession, accomplished by means of force or fear." (§ 215, subd. (a).)

Defendant contends that because the carjacking statute states that it is a "felonious taking," and a claim of right is a defense to the felonious takings of robbery and theft, a claim of right is a defense to carjacking. (§ 215, subd. (a); *People v. Tufunga* (1999) 21 Cal.4th 935, 945–947 (*Tufunga*) [claim of right is a defense to the felonious taking of robbery].)

At common law, theft and robbery were felonious takings, which required the taking of property of another with the intent to permanently deprive the owner of the property. (*Tufunga, supra*, 21 Cal.4th at pp. 945–947.) Our Supreme Court in *Tufunga* held that the Legislature intended to

7

maintain the common-law claim-of-right defense to robbery by incorporating the language "felonious taking" into the statutory crime of robbery. (*Id*. at p. 950.)

Defendant argues that the Legislature similarly intended to include a claim of right as a defense to carjacking by using the same words, "felonious taking," in the carjacking statute. We rejected defendant's argument and held that the claim of right is not a defense to carjacking in *People v. Cabrera* (2007) 152 Cal.App.4th 695, 702–703 (*Cabrera*), following Justice Werdegar's reasoning in a concurring opinion in *People v. Montoya* (2004) 33 Cal.4th 1031, 1036–1038 (conc. opn. of Werdegar, J.[2]) (*Montoya*). Justice Werdegar rejected the argument that the words "felonious taking" in the carjacking statute incorporated a claim-of-right defense. (*Ibid.* (conc. opn.).) The justice stated, "[t]he plain language of [the carjacking] statute, wherein the word 'possession' is thrice repeated, makes that [legislative] intent evident. Carjacking is defined as the taking of a vehicle from 'the possession of another' with the intent to deprive the person 'in possession' of his or her 'possession' (Pen. Code, § 215, subd. (a)). To require for a carjacking conviction, as defendant would have it, that the defendant have intended to deprive the vehicle *owner* of the vehicle or its value, based on the statute's introductory 'felonious taking' phraseology, would contravene the Legislature's evident intent to create . . . 'a crime against the possessor or passengers in a vehicle,' not a crime against ownership." (*Montoya*, at p. 1038 (conc. opn.).) Justice Werdegar concluded that "[t]he Legislature did not intend simply to incorporate the narrow common law understanding of

---

[2] The majority opinion is not contrary to Justice Werdegar's concurring opinion. The majority opinion resolved the matter on other grounds and did not consider the claim of right defense. (*Montoya*, at p. 1035, fn. 3.)

8

'felonious taking' " into the crime of carjacking. (*Ibid.*) We quoted and relied on Justice Werdegar's reasoning when holding, in *Cabrera*, that a claim of right is not a defense to carjacking. (*Cabrera*, at p. 702.)

Defendant distinguishes *Cabrera* and *Montoya* because the facts were different in those cases. The majority opinion in *Montoya* considered whether taking a vehicle was a lesser included offense of carjacking and held it was not. (*Montoya*, *supra*, 33 Cal.4th at pp. 1034–1036.) Justice Werdegar, however, was concerned that the defendant's argument that carjacking was a crime against ownership was potentially dispositive, and wrote a concurrence distinguishing the applicability of *Tufunga*, *supra*, 21 Cal.4th at pp. 945–947, from the crime of carjacking. (*Montoya*, at pp. 1036–1038.) The justice did not address the claim-of-right defense to carjacking directly but explained that carjacking was a crime against possession, not against ownership. (*Id.* at p. 1038.) We relied on the justice's reasoning in *Cabrera*, where we squarely addressed the applicability of a claim of right as a defense to carjacking. (See *Cabrera*, *supra*, 152 Cal.App.4th at p. 701.) The factual differences in those cases are immaterial because we are conducting a legal analysis of the claim-of-right defense in carjacking cases based on the legal reasoning of *Cabrera* and the concurrence in *Montoya*.

Defendant urges that we follow the courts in *People v. Magallanes* (2009) 173 Cal.App.4th 529, 534, and *People v. Vargas* (2002) 96 Cal.App.4th 456, 462, which both stated that carjacking required the taking of a vehicle that was not his or hers. The court in *Vargas* concluded that the elements of carjacking were the same as for robbery and theft, except that the defendant need not have the intent to permanently deprive the owner of the property, and carjacking was limited to the taking of motor vehicles. (*Vargas*, at

9

p. 462.)  The ruling in *Vargas* was that carjacking required asportation because the phrase "felonious taking" incorporated the common law requirement for asportation.  (*Id*. at pp. 462–463.)  The court in *Magallanes* considered the sufficiency of evidence of force or fear for carjacking by comparing the requirements of force or fear for robbery.  (*Magallanes*, at p. 534).  In passing, the court said that "[a] conviction for carjacking requires proof that (1) the defendant took a vehicle that was not his or hers. . . ."  (*Ibid*.)  Neither *Magallanes* nor *Vargas* discussed the defense of a claim of right or the distinction between ownership and possession as an element of carjacking.  " ' " '[L]anguage in a judicial opinion is to be understood in accordance with the facts and issues before the court.  An opinion is not authority for propositions not considered.' " ' "  (*Areso v. CarMax, Inc*. (2011) 195 Cal.App.4th 996, 1005–1006.)

CALCRIM No. 1650 was amended in March 2019 to remove the reference to ownership.  The applicable language now states, "The vehicle was taken from the immediate presence of a person who possessed the vehicle . . . ."  (CALCRIM No. 1650, eff. March 2019.)  Defendant argues that the current CALCRIM is not retroactive and the court was bound by the CALCRIM in effect at the time of his trial.  Defendant erroneously conflates jury instructions with statutes.  Crimes are defined by the Legislature when it enacts laws, not by the Judicial Council when it provides pattern jury instructions for crimes.  The instruction given by the court correctly stated the elements identified in the statute proscribing carjacking.

In sum, the court did not err in modifying the then existing CALCRIM No. 1650 to delete the element of taking a car that was not his or her own.  Nor did it err in failing to sua sponte give an instruction on a claim-of-right defense.  A claim of right is not a defense to carjacking.

10

## II

## INSTRUCTION ON LESSER INCLUDED OFFENSES

Defendant claims that the trial court erred in failing to instruct the jury on lesser included offenses of robbery and assault with a semiautomatic firearm. Neither party requested instructions on lesser included offenses. The court discussed its sua sponte duty to instruct on lesser included offenses even if not requested, but found no evidence of any such lesser offenses. Defendant now contends the court should have instructed the jury on misdemeanor assault and brandishing as lesser included offenses of assault with a semiautomatic firearm, and theft as a lesser included offense of robbery.

### A. *Applicable Principles*

The duty to instruct on the general principles of law applicable to the case " 'extends to necessarily included offenses when the evidence raises a question as to whether all the elements of the charged offense are present . . . .' " (*People v. Williams* (2015) 61 Cal.4th 1244, 1263 (*Williams*.) An offense is a lesser included offense if the statutory elements of the greater offense include all the elements of the lesser offense, "such that the greater cannot be committed without also committing the lesser." (*People v. Birks* (1998) 19 Cal.4th 108, 117 (*Birks*).) Instructions on lesser included offenses are required " 'only where there is "substantial evidence" from which a rational jury could conclude that the defendant committed the lesser offense, and that he is not guilty of the greater offense.' [Citation.] 'Substantial evidence,' in this context, 'is evidence sufficient to "deserve consideration by the jury," that is, evidence that a reasonable jury could find persuasive.' " (*Williams*, at p. 1263.)

B. *Robbery*

"Robbery is the felonious taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear." (§ 211.) Theft, or larceny, is "the taking of another's property, with the intent to steal and carry it away." (*People v. Gomez* (2008) 43 Cal.4th 249, 254–255; see § 484.) The intent to steal is "the intent to permanently deprive the owner of its possession." (*People v. Page* (2017) 3 Cal.5th 1175, 1182 (*Page*).) Robbery is larceny with the additional elements that "the taking must be accomplished by force or fear and the property must be taken from the victim or in his presence." (*Gomez*, at p. 254.) Theft is a lesser included offense of robbery. (*Ibid.*; *People v. Williams* (2013) 57 Cal.4th 776, 787.)

Defendant first states that the jury should have been instructed on theft because there was evidence that he did not intend to permanently deprive the victim of his phone. Intent to permanently deprive is an element of both theft and robbery, and if there was no intent to permanently deprive the victim of his phone there was neither theft nor robbery. (*People v. Chubbock* (2019) 43 Cal.App.5th 1, 10 (*Chubbock*) [intent to permanently deprive is element of theft]; *Page*, *supra*, 3 Cal.5th at p. 1182.) There was no evidence that the taking of the phone could be theft but not robbery based on defendant's specific intent to deprive the victim permanently of his phone. (*Williams*, *supra*, 61 Cal.4th at p. 1263.)

Defendant also claims there was substantial evidence that his crime was a theft and not a robbery because he did not use force. One of the additional elements of robbery not included in theft is that the taking must be accomplished "by force *or* fear." (*Gomez, supra,* 43 Cal.4th at p. 254, emphasis added; § 211.) Even if the jury believed defendant's description of

12

the taking of the phone, the taking could not be interpreted as lacking the use of force or fear. Defendant testified that he was not pointing his gun at the victim when he took the phone, but acknowledged that he had been holding his gun so that the victim could see it. Display of a firearm creates sufficient fear for a taking to be a robbery. (See *People v. Lucas* (1997) 55 Cal.App.4th 721, 745 (*Lucas*); see also *People v. Montalvo* (2019) 36 Cal.App.5th 597, 617 [insufficient evidence of fear for robbery when, among other things, no firearms displayed].) Taking a phone from a person while displaying a handgun cannot be simple theft because it would necessarily engender fear.

Further, the amount of force necessary for a taking to be a robbery is not great. " ' "All the force that is required to make the offense a robbery is such force as is actually sufficient to overcome the victim's resistance. . . ." ' " (*People v. Hudson* (2017) 11 Cal.App.5th 831, 835–836, quoting *People v. Anderson* (2011) 51 Cal.4th 989, 995.) Defendant said he "grabbed" the phone from the victim while the victim held it up to his ear. The victim resisted, saying, "Don't take my phone." Grabbing a phone from a person making a phone call, against the person's will, is force sufficient for a robbery. There is no evidence of a taking without force or fear. The court was not obliged to instruct on theft. (*Williams, supra*, 61 Cal.4th at p. 1263.)

C. *Assault with a Semiautomatic Firearm*

Defendant was charged and convicted of "an assault upon the person of another with a semiautomatic firearm . . . ." (§ 245, subd. (b).) "An assault is an unlawful attempt, coupled with a present ability, to commit a violent injury upon the person of another." (§ 240.) There was no dispute that the gun defendant used was a semiautomatic firearm. There was no evidence of an assault other than by use of the firearm.

13

1. Brandishing

To brandish is to draw or exhibit a firearm in a rude, angry or threatening manner, in the presence of another person, not in self-defense. (§ 417, subds. (a) & (b).) Defendant asserts that brandishing is a lesser included offense of assault with a firearm in reliance on *People v. Wilson* (1967) 66 Cal.2d 749, 759 (*Wilson*), in which the California Supreme Court reversed a conviction for assault for failing to instruct on brandishing a firearm as a lesser offense. As the Court of Appeal explained in *People v. Steele* (2000) 83 Cal.App.4th 212, 217–218 (*Steele*), however, the Supreme Court's ruling in *Wilson* "implied—but did not directly hold—that brandishing was a lesser included offense to assault with a firearm. That holding has no prior case support, and only scant subsequent support." (*Steele*, at p. 219.) At the time *Wilson* was decided, courts tended to require instruction on lesser related offenses, as well as on lesser included offenses. (See *People v. Geiger* (1984) 35 Cal.3d 510, 526 [requiring instruction on lesser related offenses], overruled in *Birks*, *supra*, 19 Cal.4th at p. 136, fn. 19.) The *Wilson* court did not identify brandishing as a lesser included offense, but said that under the evidence there presented, the crime of brandishing was "closely and openly connected with the facts before the court." (*Wilson*, at p. 759.) The *Wilson* court appeared to require the brandishing instruction as a lesser related offense under the facts of that case. (*Ibid*.) The California Supreme Court subsequently overruled *Geiger*, and held that a trial court is not required to instruct on lesser related offenses, but only on lesser included offenses. (*Birks*, *supra*, 19 Cal.4th at p. 136, fn. 19.)

We agree with the court in *Steele* that brandishing is not a lesser included offense of assault with a firearm under the traditional test for lesser

14

included offenses because it contains an additional element, i.e. the "rude, angry or threatening manner" of exhibition. (*Steele*, *supra*, 83 Cal.App.4th at pp. 217–218; see *Birks*, *supra*, 19 Cal.4th at p. 117.) The court had no sua sponte duty to instruct the jury on brandishing a firearm.

### 2. Simple Assault

Defendant contends the instruction on simple assault should have been given because he testified that he kept his gun inside its holster at all times, held the holster down at his side, made no threats with the gun, and did not attempt to or actually injure the victim. If the jury believed defendant, it would have found him not guilty of any assault. If it found that an assault occurred under the circumstances described by defendant, the only present ability to violently injure the victim was due to the firearm that defendant held at his side. There was no attempt and ability to cause injury other than by the implicit danger of the gun, and thus no simple assault. Defendant either assaulted the victim with a semiautomatic firearm, or he did not assault the victim. The court was not obliged to instruct on simple assault. (*Williams*, *supra*, 61 Cal.4th at p. 1263.)

### III

### SUFFICIENCY OF EVIDENCE

Defendant contends there is insufficient evidence of each of the four offenses.

### A. *Standard of Review*

On review for sufficient evidence we apply a well-settled standard. "We review the entire record in the light most favorable to the judgment below to determine whether it discloses sufficient evidence—that is, evidence that is reasonable, credible, and of solid value—supporting the decision, and not whether the evidence proves guilt beyond a reasonable doubt. [Citation.] We

15

neither reweigh the evidence nor reevaluate the credibility of witnesses. We presume in support of the judgment the existence of every fact the jury reasonably could deduce from the evidence. [Citation.] If the circumstances reasonably justify the findings made by the trier of fact, reversal of the judgment is not warranted simply because the circumstances might also reasonably be reconciled with a contrary finding." (*People v. Jennings* (2010) 50 Cal.4th 616, 638–639; *Jackson v. Virginia* (1979) 443 U.S. 307, 318–319.)

" '[A] reversal for insufficient evidence "is unwarranted unless it appears 'that upon no hypothesis whatever is there sufficient evidence to support' " the jury's verdict.' [Citation.] . . . ' "Moreover, unless the testimony is physically impossible or inherently improbable, testimony of a single witness is sufficient to support a conviction." ' " (*People v. Prunty* (2015) 62 Cal.4th 59, 89.)

B. *Carjacking*

Defendant challenges the carjacking conviction on the ground there was insufficient evidence that the victim was in possession of the car when defendant took it. He also contends he had an actual but mistaken belief that the victim was stealing the car.

Carjacking does not require that " ' "the victim be inside or touching the vehicle at the time of the taking." ' " (*People v. Coryell* (2003) 110 Cal.App.4th 1299, 1303.) A victim possesses property if he or she "has some loose custody over the property, [or] is currently exercising dominion over it . . . ." (*People v. Hamilton* (1995) 40 Cal.App.4th 1137, 1143.) Possession includes direct physical control of an object. (*People v. Scott* (2009) 45 Cal.4th 743, 749; *People v. Hutchinson* (2018) 20 Cal.App.5th 539, 547.) The victim had direct physical control of the vehicle when it was attached to his tow truck and hoisted into the air, and for the 10 minutes that it took the victim

to unhook the car and release it from his tow truck. It is true, as defendant contends, that the victim said he would release the car if defendant had called the police, and that the car was not so completely attached to the victim's tow truck that the victim could have driven away with it. Possession need not be either fully complete or of any specific duration. (See *Hutchinson*, at p. 547; *Coryell*, at p. 1303.) Substantial evidence supports the jury's verdict.

The jury was instructed on the mistake-of-fact defense. Substantial evidence supports the jury finding that defendant was not mistaken. Defendant never called the police for assistance, either when he first saw the victim taking the car, when he went to safety inside his apartment, when he emerged with a gun, when he stood outside watching the victim unhook the car, or when he had driven the car away to safety. It was reasonable for the jury to infer that a person thinking his car was being stolen would have called the police.

C. *Robbery*

Defendant contends there was insufficient evidence of force or fear to support the robbery verdict. Holding his gun in a way that made it visible to the victim was sufficient to support the force or fear requirement. (*Lucas*, *supra*, 55 Cal.App.4th at p. 745.) The victim testified that defendant aimed the gun at his chest when taking his phone, that he was terrified, and that he feared for his life. This evidence supported the jury's finding that defendant took the phone by force or fear.

Defendant also contends there was insufficient evidence to support an intent to permanently deprive the victim of his phone, because both the victim and the defendant testified that the defendant said he would return the phone. Instead, defendant took the phone with him as he drove away.

17

There is rarely direct proof of an intent to permanently deprive, so it is usually shown by circumstantial evidence. (*People v. Bloom* (1989) 48 Cal.3d 1194, 1208; see *Chubbock*, *supra*, 43 Cal.App.5th at p. 11.) The verdict shows that the jury did not believe defendant's statements. The jury could reasonably infer that defendant never intended to return the phone because he did not want the victim to call the police. We accept the jury's determination of credibility. (*Jennings*, *supra*, 50 Cal.4th at p. 638.) In addition, defendant tried to destroy the phone, and succeeded in damaging it to the point that it was unusable. An intent to deprive the victim permanently can be inferred from an intent to destroy the property. (*People v. Shannon* (1998) 66 Cal.App.4th 649, 656.) Ample evidence supports the jury's verdict.

D. *Assault with a Semiautomatic Firearm*

Defendant contends there was insufficient evidence that his actions with his gun would "directly and probably result in the application of force to a person" to support the finding of assault with a semiautomatic firearm.

"To point a loaded gun in a threatening manner at another (especially if accompanied by threats to shoot . . .) constitutes an assault, because one who does so has the present ability to inflict a violent injury on the other and the act by its nature will probably and directly result in such injury." (*People v. Miceli* (2002) 104 Cal.App.4th 256, 269.) The victim testified that defendant pointed a gun at him in a threatening manner and threatened to shoot him. The gun, indisputably a semiautomatic firearm, was loaded with six bullets, one in the chamber. Defendant acknowledged that his gun was loaded and its hammer was cocked back when he confronted the victim about the car. Sufficient evidence supported the jury's finding of an assault with a semiautomatic firearm.

18

E. *Attempting to Dissuade a Witness*

Defendant contends there was insufficient evidence that he had the specific intent to dissuade a witness from reporting a crime. As with the specific intent for robbery, we look at circumstantial evidence to support this finding and view the evidence in the light most favorable to the jury's finding.

The jury could reasonably infer that when defendant, in the midst of committing a crime, took the victim's phone at gunpoint, while the victim was talking on the phone, the defendant had the specific intent to dissuade the victim from reporting a crime. The jury reasonably rejected defendant's claim that he thought the victim was calling for criminal backup. Sufficient evidence supports the jury's finding.

IV

INEFFECTIVE ASSISTANCE OF COUNSEL FOR FAILING TO APPLY FOR MENTAL HEALTH DIVERSION

Defendant contends that his counsel's performance was ineffective because counsel did not apply for pretrial mental health diversion for defendant.

A. *Applicable Principles*

1. Ineffective Assistance of Counsel

The federal and state Constitutions guarantee criminal defendants the right to adequate representation by counsel. (U.S. Const., 6th Amend.; Cal. Const., art. I, § 15; *People v. Lucero* (2017) 18 Cal.App.5th 532, 537.) To prevail on a claim of ineffective assistance of counsel, a defendant must show both "that counsel's performance was deficient," such that "counsel was not functioning as the 'counsel' [constitutionally] guaranteed," and "that the deficient performance prejudiced the defense." (*Strickland v. Washington* (1984) 466 U.S. 668, 687 (*Strickland*); *People v. Centeno* (2014) 60 Cal.4th 659, 674 (*Centeno*).) The defendant must demonstrate "resulting prejudice,

19

i.e., a reasonable probability that, but for counsel's deficient performance, the outcome of the proceeding would have been different." (*People v. Mai* (2013) 57 Cal.4th 986, 1009 (*Mai*).) "A reasonable probability is a probability sufficient to undermine confidence in the outcome." (*Strickland*, at p. 694.) "A defendant must prove prejudice that is a ' "demonstrable reality," not simply speculation.' " (*People v. Fairbank* (1997) 16 Cal.4th 1223, 1241 (*Fairbank*).) "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." (*Strickland*, at p. 697; *People v. Bonilla* (2018) 29 Cal.App.5th 649, 654.).)

### 2. Mental Health Diversion

The Legislature created a program of pretrial mental health diversion to ameliorate possible punishment for individuals with qualifying mental health disorders by diverting them from the criminal justice system into mental health treatment, while protecting public safety. (§ 1001.35.) A trial court may grant pretrial diversion under specified circumstances. (§ 1001.36.) Among these, the defendant must provide "a recent diagnosis by a qualified mental health expert" of one of the disorders identified in the Diagnostic and Statistical Manual of Mental Health. (*Id*. at subd. (b)(1)(A).) The trial court must also be "satisfied that the defendant's mental disorder was a significant factor in the commission of the charged offense," meaning that it "substantially contributed" to defendant's commission of the offense. (*Id*. at subd. (b)(1)(B).) To determine if it was a significant factor, the court may review, inter alia, "evidence that the defendant displayed symptoms consistent with the relevant mental disorder at or near the time of the offense," and "records or reports by qualified medical experts." (*Ibid*.)

20

B. *Analysis*

Defendant had a qualifying diagnosed disorder, i.e. bipolar disorder. He also had substance abuse disorder. The psychologist also said that defendant had an alcohol abuse disorder, but defendant said that he had not used alcohol in four years. On the morning of the crime he over-used Oxycontin that had been prescribed for pain.

The record does not show, however, that either his bipolar disorder or his opioid abuse played a significant role in defendant's commission of the charged offenses. Defendant's actions were deliberate and goal-oriented. The victim said the defendant spoke in a calm voice throughout the incident. Neither the victim nor the defendant described any behavior that was out of the ordinary, except for committing a crime. A psychologist tested and interviewed defendant, and reviewed the police report and other information. The psychologist concluded that "no nexus was established between [defendant's bipolar disorder and depression] and the events of the instant matter." Defendant told the psychologist that at the time of the offense he was stressed but not "in the midst of either a severe depressive or manic episode." The psychologist also stated that defendant's judgment might have been clouded by his use of Oxycontin at the time of the offense. There is no evidence that the use of Oxycontin played a significant, or any, role in defendant's commission of the crime, however. Defendant never stated that his judgment was clouded at the time of the crime. The police officers did not mention that defendant appeared to be under the influence of a drug and did not conduct any tests for drug use.

*People v. Frahs* (2020) 9 Cal.5th 618, which granted a conditional reversal and remand for a mental health diversion hearing, does not compel a different result. (See *id*. at p. 640.) In *Frahs*, our Supreme Court addressed

21

the narrow question of "whether [section 1001.36] applies retroactively to cases in which the judgment is not yet final," and held that it did. (*Id.* at p. 624.) The trial here started more than a year after section 1001.36 went into effect on June 27, 2018. (Stats. 2018, ch. 34 (A.B. 1810) § 24, eff. June 18, 2018.) Retroactivity is not at issue here. Most importantly, the standard of review here is more stringent than the standard of review in *Frahs*: defendant had to show a demonstrable reality that he would have received a more favorable result if defense counsel had requested a hearing on mental health diversion. (*Mai, supra*, 57 Cal.4th at p. 1009; *Fairbank, supra*, 16 Cal.4th at p. 1241.)

In light of the psychologist's opinion there was no nexus between defendant's bipolar disorder and the crime, defendant's statement that he was not manic or depressive at the time, and the description of the crime adduced at trial, the record contains insufficient evidence to show, to a demonstrable reality, that the result of the outcome would have been more favorable to defendant if his counsel had requested mental diversion before trial. (*Strickland, supra*, 466 U.S. at p. 694; *Mai, supra*, 57 Cal.4th at p. 1009; *Fairbank, supra*, 16 Cal.4th at p. 1241.)

C. *Failure to Present Evidence of Mental Disorder at Trial*

Defendant also contends that his counsel was ineffective in failing to present evidence of his mental disorder at trial. Defendant has not explained how an expert on mental disorders would have assisted him at trial. (*People v. Carrasco* (2014) 59 Cal.4th 924, 984 [defendant must explain how alternate tactic would have assisted him].) We cannot reverse on direct appeal for ineffective assistance of counsel when there might have been tactical reasons for counsel's choice not to present psychological evidence. (*People v. Arredondo* (2019) 8 Cal.5th 694, 711.)

# V

## SENTENCING DISCRETION

Defendant was presumptively ineligible for a grant of probation because the jury found he personally used a firearm in connection with carjacking and robbery. (§ 1203, subd. (e)(2).) He contends the trial court erred in finding that this was not an "unusual case" in which a grant of probation would have served the interests of justice despite his presumptive ineligibility for probation. He asserts that he had no prior criminal history, the circumstances were unusual because he carjacked a car that was registered to him, and both the probation officer and the victim recommended probation with custody of 365 days.

### A. *Applicable Principles*

A court has broad discretion to declare a case "unusual," such that a criminal defendant who is presumptively ineligible for a grant of probation may nonetheless be granted probation. (§ 1203, subd. (e); *People v. Nuno* (2018) 26 Cal.App.5th 43, 49; *People v. Superior Court* (*Du*) (1992) 5 Cal.App.4th 822, 831.) The court "need not provide reasons for declining to find a case 'unusual' so as to rebut any presumptive ineligibility for probation." (*Nuno*, at p. 49.) A court may, but is not required to, consider criteria set forth in the California Rules of Court for finding an unusual case. (Cal. Rules of Court, rule 4.413; *People v. Stuart* (2007) 156 Cal.App.4th 165, 178.) The defendant bears the burden on appeal of showing that the denial of probation was arbitrary, capricious, or exceeding the bounds of reason. (*Du*, at p. 831.)

B. *Analysis*

The court considered the issue carefully.  It recognized that defendant had no criminal history and had been law-abiding for 60 years.  The court reviewed the probation officer's report, the sentencing memoranda from both sides, argument by both counsel, and defendant's statements at sentencing. The court found this was not an unusual case that merited probation.  The court stated that the sentence was based on the crimes committed, all the circumstances, and defendant's background.  In mitigation, the court stated that defendant was 60 years old, had no prior criminal record, and all the crimes occurred in a single, short period of time.  This was not a typical carjacking case because defendant took a car that he thought belonged to him and was on his property.  The court described the aggravating factors. Carjacking and armed robbery are serious, violent felonies.  Defendant armed himself with a loaded firearm and threatened to shoot the victim.  The court concluded probation was not warranted for these and other circumstances. Defendant's carjacking and robbery were more serious than other instances of those crimes because defendant pointed a loaded firearm at the victim and threatened to shoot him.  (See Cal. Rules of Ct., rule 4.413 (c)(1)(A) [factor to consider in overcoming the presumption of eligibility].)

The court gave consideration to defendant's lack of criminal history.  It sentenced defendant to the lowest term available for carjacking, imposed the sentence for robbery to run concurrently, and struck the 10-year firearm enhancements in connection with both the carjacking and robbery.

Defendant has not borne his burden of showing that the trial court's decision not to overcome the presumption of ineligibility was arbitrary, capricious, or outside the bounds of reason.

24

## DISPOSITION

The judgment is affirmed.

                                                    BENKE, Acting P. J.

WE CONCUR:


HUFFMAN, J.


GUERRERO, J.